HANNAH O. TATEM et al.

v.

ADEN W. POWELL, MARY POWELL et al.

1. In a suit by the children of an intestate by a former wife against the widow and her son, it appeared that the widow released her dower in consideration that she have an income for life of one-third of the estate. The homestead was worth $3,000. At its sale it was stated by the commissioners that the widow desired to purchase it for a home and that the heirs were willing. It was sold to the widow for $1,580, and an absolute deed given. No money was paid, but the commissioners took a mortgage for the amount, reciting that such amount was part of the dower assigned to the widow. The widow gave a receipt remitting the interest on the amount so long as she "shall hold the title in fee simple" Defendants and a part of the complainants were present at the sale and consented to what was done. Others were absent, some of whom were minors. The mortgage was never paid, and the widow, claiming to own the homestead in fee, deeded a part thereof to her son, a co-defendant. It was found from the evidence, which was conflicting, that the homestead was sold to the widow on the understanding between her and the heirs present that she was to have its use for life only, and at her death it should be divided among the heirs of her deceased husband.—*Held*, that the intent was to convey to the widow a life estate only, and as her co-defendant was present at the sale his title was no better than that of the widow.

2. The confirmation of the sale to the widow did not cure the mistake between the original parties or estop complainants from asserting their rights.

Heard on bill, answer and proofs.

*Mr. Herbert A. Drake*, for the complainants.

*Mr. Martin V. Bergen*, for the defendants.

PITNEY, V. C.

The complainants are a portion of the heirs at law of Arthur Powell, deceased, three of them being his children and the others being descendants. The defendant Aden W. Powell is another of his children and heirs, and Mary Powell is his widow. The other defendants are the remaining heirs at law.

Tatem v. Powell.

The contest is between the complainants and Aden W. Powell and Mary Powell. The other defendants have not answered and their interests are with the complainants.

The object of the bill is to charge Mary Powell as a trustee for the complainants and other heirs of Arthur Powell of a house and lot of which Arthur Powell died seized, and which was conveyed to Mrs. Powell by commissioners appointed by the orphans court of Camden county to divide the lands of which Arthur Powell died seized by deed dated January 4th, 1869. Aden W. Powell is charged as a party defendant in the same category as his mother because she has recently conveyed to him a small portion of the premises in question.

Arthur Powell died seized of a farm and of several houses and lots in Gloucester City, including his homestead (the one now in question) and of several vacant lots. He left eleven living children and several grandchildren, representing two deceased children, some of whom were under age at the time of the sale—in all twenty-one children and grandchildren. These were the offspring of two wives, he having been married prior to his marriage to the defendant Mary Powell. Upon application by the defendant Aden W. Powell to the orphans court of Camden county, Joshua P. Browning, William P. Tatem and Jacob L. Rowand were appointed commissioners to divide the real estate, and were subsequently ordered to sell it. The sale took place at the homestead October 17th, 1868. The homestead house and lot were struck off and sold to the widow, Mary Powell, for $1,580; the sale was duly confirmed and a conveyance made in pursuance of it, and the commissioners charged themselves with the amount of the purchase-money.

The ground upon which the complainants seek to charge Mrs. Powell as trustee as to this lot is that she paid nothing for it, but that, so far as it can be said to have been paid for at all, it was paid for with the money of the heirs, and hence a trust results in their favor.

The facts, so far as they are undisputed or established beyond dispute, are: That the house and lot in question was fairly worth at the time of the sale $3,000; that one or more persons were in

attendance who would have paid that price for it; that it was stated by one or more of the commissioners, and also by other persons, to the persons proposing to purchase, that the widow desired to purchase it for a home, and that the heirs were willing that she should have it; that the result was that the bidding stopped, and it was struck off to the widow at the sum named— $1,580; that she had previously released her dower in all the premises upon the understanding that she should have one-third of the proceeds of the sale invested for her benefit for life; that such one-third amounted to over $4,500, and upon the delivery of the deed for the premises in question she executed to the commissioners a bond and mortgage for the whole consideration money—$1,580—with a condition, as follows:

"The condition of this obligation is such, that if the above bounden Mary Powell, her heirs, executors, administrators, assigns, or any of them, shall and do well and truly pay, or cause to be paid unto the above named Joshua P. Browning, William P. Tatem and Jacob L. Rowand, commissioners aforesaid, their certain attorney, executors, administrators or assigns, the just sum of $1,580 in one year from the date hereof, or at and immediately after the death of the said Mary Powell, at the option and determination of the said commissioners, or the survivors or survivor of them or at such time as they, the said commissioners, or the survivors or survivor of them shall demand payment of the same, with interest at the rate of seven per centum per annum, payable half yearly, from date (The said money being a part of the dower assigned to the said Mary Powell, out of the sale by the said commissioners of the real estate of her late husband Arthur Powell dec'd on which she is entitled to interest during her natural life, and is secured on property purchased by the said Mary Powell in fee, at the sale of said real estate,) without any fraud or further delay, then the above obligation to be void, or else to be and remain in full force and virtue,"

which bond and mortgage were set apart by them as a part of the widow's dower fund; that she at once gave the commissioners a receipt as follows:

"I, Mary Powell, widow of Arthur Powell, deceased, having purchased the homestead property of my late husband at the sale made by the Commissioners for the sum of $1,580.00 for which sum I executed to the said commissioners a bond and mortgage on the premises and agreed that the said sum shall be considered as a part of my dower money in said estate. I do further agree that the interest on the said sum of $1,580.00 shall not be required of the said

Tatem *v.* Powell.

·commissioners by me, but be considered as fully paid and received by me in :the holding of the said property for so long a time as I shall hold the title to :the same in fee simple.

"Dated July      1869.

                    "(Signed)          MARY POWELL."

That said bond and mortgage have never been enforced or demanded, and are still in the hands of the surviving commissioner, Mr. Tatem ; that three of the complainants, Mrs. Tatem, Mrs. Merrill and Mrs. Conrow, the defendants Aden W. Powell and ·others, but not all of the heirs, were present at the sale, and that some of those who were absent were minors.

The matter of fact in dispute is as to what occurred at the sale of the homestead.

The three complainants just named and their brother-in-law, William Ellis, their nephews James Ellis, Edward B. Ellis and Samuel B. Ellis, were sworn and substantially agree in stating that outsiders were stopped from bidding, and, as most of them supposed, the sale was stopped upon the understanding arrived at among the heirs present and between them and their mother, that she should have the homestead for her lifetime as a part of her dower, and that at her death it was to be sold and the proceeds divided among all the heirs of their father. They do not seem to have had any very clear notion as to how this was to be done, but left it to the commissioners to manage. The heirs seem not to have understood that an absolute deed was to be given to their mother or a mortgage taken from her, and not to have heard ·of a deed or mortgage until very lately.

These witnesses do not, in their account of these conversations, altogether agree as to the language used in arriving at the result above stated, but I find no substantial disagreement among them.

A careful review of the testimony, in connection with the admitted circumstances, leads me to the conclusion that the proofs warrant me in finding that the property in question was struck ·off and sold to Mrs. Powell upon an understanding among the heirs present and with her that she was to have the use of it for her life only, and that at her death it should be divided among ·the heirs at law of her husband ; that the carrying out of this

understanding was left to the commissioners and they adopted
the plan already stated for so doing.

The result of the affair as actually executed if allowed to stand
will be to work a fraud upon the heirs. They will receive just
so much less of their ancestor's estate than they are entitled to, as
the property exceeds in value the amount of the mortgage. In
the absence of some such arrangement as that proven, and with-
out the consent of all the heirs, the sale by the commissioners of
the homestead at a less price than they knew it would bring was
a fraud upon such of the heirs as were not privy to it, and I
cannot believe that the commissioners would have sold the prop-
erty at such a price if they had not believed that such an
arrangement had been made. Some of the heirs, it must be re-
membered in this connection, were not only not present at the
sale, but lived in distant states and did not consent, and some
were minors and could not consent.

The serious question is whether the complainants are entitled
to any remedy on these facts.

I am unable to adopt the theory of counsel of complainants
that a trust resulted to the heirs at law. That theory is based
upon the notion that the purchase money was paid out of the
funds of the estate, and that notion has no foundation in fact.
No money was paid. The whole of the consideration was secured
by a mortgage given to and held by the proper trustees for the
heirs at law, which will be enforceable by them as soon as it has
served the temporary purpose of forming a part of the widow's
dower.

The real injury which will be done if the parol understanding
is not enforceable is that the property has been sold for less than
its value. Of course the mere fact, standing by itself, that the
widow agreed by parol at the time of the sale that she would
hold the property for her life only as a part of her dower, and
that at her death it should go to her husband's heirs, cannot be
recognized or enforced by this court. The statute of frauds
forbids it. But in this, as in all other cases, this court will not
permit the statute of frauds to be used as a means of perpetra-
ting a fraud. That is the fundamental principle which underlies

the action of this court in all cases in which it dispenses with the requisitions of that statute.

This doctrine, as applied to judicial sales of land, is illustrated in this state by the cases of *Combs* v. *Little, 3 Gr. Ch. 310; Marlatt* v. *Warwick & Smith, 3 C. E. Gr. 109; 4 C. E. Gr. 441; Merritt* v. *Brown, 4 C. E. Gr. 286; 6 C. E. Gr. 401; Walker* v. *Hill, 6 C. E. Gr. 191; 7 C. E. Gr. 513; Dodd* v. *Wakeman, 11 C. E. Gr. 484; 12 C. E. Gr. 564.*

In *Merritt* v. *Brown, 6 C. E. Gr. 401,* the learned chief-justice, speaking for the court of errors and appeals, states the rule thus : " When the elements of the case are simply a purchase under a parol promise to hold for the benefit of the defendant in execution, I think such an arrangement, the statute of frauds being set up as a defence, cannot be enforced either at law or in equity. * * * In *Combs* v. *Little* the statute of frauds was not pleaded, and in that case, as also in *Marlatt* v. *Warwick, 4 C. E. Gr. 438,* there were present circumstances of fraud upon which the judgment of the court rested. * * * Whenever an agreement of this nature has been entered into and the purchaser has made use of it, or of any other contrivance, to obtain the property in execution for an inadequate price or to the oppression of the defendant, the right to equitable relief is clear."

The circumstances from which fraud was inferred in *Combs* v. *Little* and *Marlatt* v. *Warwick & Smith* were much the same. In the former Chancellor Pennington says : " The lots sold low and others did not bid because it was understood they were sold for complainant's benefit." In *Marlatt* v. *Warwick & Smith,* in substance, the same fact appeared. The sale was so managed by the joint act of the complainant and defendant as to cause the property to be sacrificed, the complainant acting upon the belief that the defendant was buying it in for him. No other facts evidencing fraud appear in either case. Indeed, Chancellor Zabriskie, in the latter case—*3 C. E. Gr. 123*—expressly acquits the defendants of any actual fraud. His head note is : " If the plaintiff, at a sheriff's sale, sees that the defendant is under the impression that the plaintiff is purchasing for his benefit and permits him to remain and act under it, and by means of that impression

21

and the co-operation of the defendant produced by it purchases the property at an inadequate price the purchase will be held to have been made in trust for the defendant."

It seems to follow from this review of these cases that the element of fraud found in them by the learned chief-justice, as above stated, must have consisted in the attempt to take advantage of the confidence of the complainant that the defendant was buying for complainant's benefit, by which the defendant was enabled to acquire the legal title at an unconscionable price. The same elements of fraud were present in *Dodd* v. *Wakeman,* with the additional element of the defendant occupying the position of confidential friend and adviser of the complainant. The court of appeals absolved him of actual fraud.

But there is here also the additional element of mistake. The object of the parties—the widow and adult heirs—was to have this piece of property set apart as a portion of the dower of Mrs. Powell, to give her a mere life right in it, and they supposed the commissioners would so arrange it. But those gentlemen did something quite different and vested in the widow the fee simple. It does not appear that any of the heirs, except Aden W. Powell, understood this or knew that the real transaction was on its face different from what they supposed it to be. This they seem to have learned only a short time before this bill was filed.

None of the parties had any counsel. As usual in such cases, they relied upon the commissioners to carry through the whole affair, and in the emergency which arose they relied upon them also to carry out their particular purpose. I think the language used in the condition of the bond for $1,580, and in the widow's receipt above set forth, shows that the commissioners probably thought they were carrying out the intention of the parties. But the legal effect of the transaction leads to a different result.

In *Marlatt* v. *Warwick, 3 C. E. Gr. 108,* Chancellor Zabriskie put the case upon the ground of mistake alone. He found that the complainant was justified in believing that the defendants were purchasing for his benefit, though they did not so understand it. At *p. 123* he says: "I am gratified to arrive at this conclusion, to which the evidence plainly leads, as it relieves the

Tatem *v.* Powell.

defendants from any imputation, either of untruthfulness in their answer or of intending to take advantage of the false impressions of Marlatt to obtain his property at such grossly inadequate prices. It is difficult to say which, under the circumstances, would be the darkest stain. A sheriff's sale made and permitted by Marlatt to go on under so serious a mistake when it was in his power to prevent it cannot be permitted to stand. To correct mistakes and avoid transactions made under the influence of mistakes is one of the plainest and most ancient heads of equity jurisdiction, and it has been frequently used in cases of sheriff's sales," citing cases.

My conclusion is that the sale and conveyance of the fee in this case was a fraud upon the rights of the infant heirs, and on such of the adults as were absent and not consenting thereto, on the ground that it was intentionally and knowingly made for a sum less than the value of the land and less than it would have brought but for the interference of the commissioners and others in behalf of the widow.

As against the adult heirs who were present and consented to what they supposed was to be done, I think, upon the principle of the cases above cited, that it would be, in effect, taking an unconscionable advantage of a mistake for the widow now to claim a fee simple estate under her deed.

The confirmation of the sale by the court was relied upon by the defendants. Such confirmation perfected the legal title in Mrs. Powell and all *bona fide* purchasers from her without notice, but, in my judgment, it did not eliminate this element of fraud or cure the mistake as between the original parties to the transaction. Nor does the case disclose any element of estoppel in favor of the defendants. The evidence satisfies me that both of them were cognizant of the understanding upon which the heirs present consented to whatever was done at the sale. Aden W. Powell was the petitioner in the partition proceedings, and is, in a measure, responsible for a sale made at so low a price that the commissioners were willing to take a mortgage back for the whole purchase-money. A short time before the filing of the bill he contemplated taking title from his mother for the premises in question at the

amount of the mortgage, and he swears that such was the bargain at the time of the sale, but before doing so he thought it necessary to consult with, and get the permission of, his sisters—three of the complainants herein. He claims title to a small portion of the lot not covered by any building, by deed from his mother dated in 1874 and recorded in 1882. No possession was taken under it, and nothing done on the ground to manifest a change of the title until shortly before the bill was filed, and the complaining heirs do not appear to have had any notice of it until then. He swears that he paid his mother in cash $200 for the piece so conveyed. His mother swears that he paid her partly in work and partly in cash. His manner on the stand and other circumstances lead me to place little reliance on his evidence. He lived for many years with his wife in one part of the house on the premises in question, his mother occupying the other part, and had various dealings with her which would render it very easy for him to swear that he had paid her $200 for this little piece of land, but the fact that he withheld his deed from the records for eight years, that he did not take possession of the lot or manifest any ownership over it or do anything by which he might derive any benefit from it for over fifteen years, and finally, that long after taking the deed he applied to his sisters for permission to purchase the whole lot at $1,580, just what his mother paid for it, lead me to the conclusion that he probably paid nothing for it. Be that as it may, whatever he did pay was paid with notice of the equitable rights of the heirs of his father, and he must be charged accordingly.

The result is, that the complainants are entitled to relief. There must be a decree declaring that the deed of conveyance from the commissioners to Mrs. Mary Powell must be held and construed at all times, and in all places, and for all purposes, as conveying to her an estate for life only. The deed from Mrs. Powell to her son must, in like manner, be held and construed at all times, and in all places, and for all purposes, as conveying to him an estate for the life of his mother, the grantor, only; and both of the defendants must be perpetually enjoined and restrained

from in anywise conveying or encumbering the property.   There must be a decree that the defendant Mary Powell is not personally liable upon her bond for $1,580 held by the commissioners.